*Dumoulin* for the plaintiff, *Randall* for the defendant.

——◦+◦——

## GILLY & AL. vs. LOGAN & AL.

The deposition of a witness examined, on another day, or at another place, than that mentioned in the notice cannot be read.

A factor, who sold at 60 days, cannot avoid the consequence of his neglect to demand payment, at the expiration of that time, by shewing that it was his practice not

APPEAL, from the court of the first district.

MARTIN J. delivered the opinion of the court. The plaintiffs state that they are creditors of the defendants for the balance of an account annexed to the petition

The defendants pleaded the general issue, averring they employed the plaintiffs, as their factors and agents, to sell produce----which they disposed of on credit, without having received any authority for doing so, and without taking any security for the payment----that

the plaintiffs did also act unfaithfully and contrary to orders, in the shipment of a parcel of raw hides, whereby the defendants sustained damages to the amount of $1500, which matter they plead in compensation, and pray judgment according to law.

The defendants had judgment for $758 83, and the plaintiffs appealed.

The record shews, that

Turcas deposed that, in 1818, the averaged weight of salted hides, was from 25 to 30 lbs The very heaviest weighed 40 lbs.; but they were rare.

Lee deposed the average weight of salted hides, is from 25 to 30 lbs.

Howit, a witness for the defendants, deposed that he purchased whiskey from them in April, 1818. It was understood he was to have a credit of four months, and he never got goods from them on a shorter credit. In his dealings with the defendants, he did not generally give his notes for goods as they were bought----but only when the quantity taken was thought sufficiently large, and then the note was given at four months.

Five notes, marked 1 to 5, being exhibited, the witness said, he gave them to the defen-

East'n District.
Feb. 1824.

GILLY & AL.
vs.
LOGAN & AL.

to call for a note till the amount sold, was sufficient to render it necessary, & then take it at 60 days.

If a factor purchase goods for his principal, which he promises to ship him, he cannot afterwards cancel or renounce the sale.

The defendant's debt offered as a set off, will be allowed, even if the plaintiff does not establish his.

dants for his purchases in April, 1818. The price of fifteen barrels whiskey, charged in the account of sales, was either included in the note of March 31st, or one of the subsequent ones.

On his cross examination, the witness said he cannot tell whether he gave his note to the defendants, for any one of the items in the account annexed to the petition---that his house, while in business, had large transactions with the defend nts. It was agreed between him and Gilly, that all purchases should be at four months, and he does not recollect any specific article purchased at a shorter credit. He thinks that when his house stopped payment, there were upwards of $1000 due the defendants. All the purchases made in April, 1818, are included in the notes produced.

M'Clelland, a witness of the defendants, deposes, that the account annexed to the petition, is in the handwriting of one M'Gowan, a clerk of the defendants, who has left the country----that the accouut annexed to the answer, is also in his handwriting, and signed by Gilly & Prior.

Holliday, a witness of the defendants, deposed, that he was in the employ of J. Prior

& co. of Louisville, from October 1, 1816, to the 21st of October, 1818. He has knowledge of letters and communications between them and the defendants, relative to a shipment of hides, on the steam boat James Monroe, made by the plaintiffs from New-Orleans, for the account of the defendants. The first was a letter from the latter to J. P. & co. in the beginning of the spring of 1818----he presumes a few weeks after the James Monroe left New-Orleans. The defendants informed J. P. & co of a shipment of hides, by the plaintiffs for the defendants' account, and they desired information of the probable time, at which the boat might reach Shippingport, that they might send J. P. & co. funds to discharge the freight. Shortly after, J. P. & co. received a second letter from the defendants, mentioning a report, in circulation, of the loss of the boat, desiring immediate information, and repeating the call for information of the probable time of her arrival, (if she was not lost,) that funds might be forwarded to pay the freight. The witness was at Shippingport, when the boat arrived, but saw no hides delivered out of her to the defendants as shipped by the plaintiffs in New-Orleans.

East'n District. After the receipt of these letters by J. P. & co.
*Feb.* 1824.
one of the defendants came to Louisville to
GILLY & A L. purchase hides—they having a large supply of
*vs.*
LOGAN & AL. them; the witness attended to the delivery of
them, and while doing so, the defendant told
him his objection to receiving the hides, sent
by the plaintiffs by the boat, was on account of
their being too light—lighter than they had or-
dered—their instructions being to buy none
but large, heavy ones. The witness, asked
why the objection was now made, when it was
not, as to the hides shipped in the Napoleon,
which were still lighter; and was answered,
the defendant had been induced to receive them
on account of the then scarcity of hides, and
the need in which they stood of hides at this
yard. The witness from the conversation, is
impressed with the idea that the defendants
would not have objected to the hides, had their
arrrival been timely. He never heard of any
objections of the defendants to the hides, till
after the boat sunk, and he had no conversa-
tion with any of the plaintiffs, till after that
event.

The defendants' counsel, before the cross
examination, objected to the recital of any
thing relative to the defendants' letters, as they
were not produced.

East'n District.
*Feb.* 1824.

GILLY & AL.
*vs*
LOGAN & AL.

On the cross examination, the witness deposed, that previous to the conversation at Louisville, J. P. & co. had received a letter from the defendants, stating the hides would not be received, as they were not purchased according to orders. He does not know how many hides were shipped in the James Monroe, and knows they were heavier than those in the Napoleon, from a calculation made on the two bills of lading. Hides from 30 to 32 lbs. are the heaviest; those from 26 to 30 lbs. are reckoned heavy. He does not positively remember, whether the account of the loss of the James Monroe was confirmed, before J. P. & co. received the defendants' letter, informing them the hides on board would not be received; but he is almost sure that it was.

Hawkins deposed he landed in New Orleans, March 30, 1818, and left it on the 8th of April, following, during which time he saw W. Logan, one of the defendants, almost every day. He had upwards of 5,000 gallons whiskey, which he sold in the course of a week, for 60 to 70 cents—the last lot, of 124 barrels, to Logan, at 60. On the day after his arrival, he was informed by the plaintiff, Gilly, whiskey would fetch sixty-two and a half cents. He

said he could shortly sell all he had, if sent to his warehouse, though he could not. if left in the boat, as he could not so conveniently attend to the sale there.    He said there would be no storage charge, only for drayage and commissions.    Logan inquired how the plaintiffs went on with the sale of his whiskey, and wished they could effect it as early as possible. The witness believes Logan's whiskey was as good as his—as it came from the same neighborhood, and partly the same distilleries, and Logan is particular in his choice.    He lives near the defendants, and knows that in 1818, and ever since, they were in the habit of tanning hides, and in the purchase of Spanish hides, and knows they have been very particular in their orders for the purchase of hides.

Samuel Logan deposed, that, in the second week of October, 1818, he went to Louisville with the defendant, A. Logan, for the purpose of buying hides ; soon after their arrival, they applied to J. P. & co. who said they would take 19 cents per pound for what they had left; but had been selling at 20.    They said their hides had come in the steam boat Kentucky, shipped by the plaintiffs from New Orleans. A Logan then complained of the ill treatment

East'n District.
Feb. 1824.

GILLY & AL.
vs.
LOGAN & AL.

of the plaintiffs, J. P. & co. and produced the plaintiffs' letters to the defendants, of July 11, 1818, announcing the purchase, for the defendants, of 600 heavy salted hides, at 11 cents, and their intention to ship them on the Kentucky. He said he would hold them accountable for the hides, and was informed J P. & co. could not account for it, and would write to G. & P. A. Logan produced a letter, dated in 1817, soliciting the defendants' orders for the purchase of hides in New Orleans, and recommending the house in New Orleans as good judges of hides, and as one who could perhaps make as good purchases of hides, as any house in New-Orleans. The witness purchased J. P. & co's. hides at 19 cents. They averaged about 28 lbs. He had before bought 208 hides, at 20 cents, averaging 34 pounds. They were of the same lot, and perhaps the best he ever saw.

The witness, in answer to the defendants' questions, said, he let them have 76 of the hides, knowing the great want they were of them, and knowing they would not buy from J P. & co. what they considered to be their own property He well knew the defendants' tanning establishment, and that in 1818, it re-

East'nDistrict.
*Feb.* 1824.

GILLY & AL.
*vs.*
LOGAN & AL.

quired 1000 hides to complete its stock. He is himself a tanner, and has been engaged in tanning for upwards of thirty years. He believes the defendants have sustained an injury of $900.

Wallace deposed he is a tanner, and has carried on the business since 1805  In September, 1818, he bought from J. P. & co. 98 hides, weighing upwards of 3000, at 19 cents. There was not a single one damaged, and he believes they were the best he ever saw. He has long known the defendants—they are as extensively engaged in tanning, as any house in the western country. He estimates their loss, by the disappointment, in receiving the hides by the Kentucky, at $1000.

Foe, a witness for the plaintiffs, deposed, he was a clerk to the late house of Stoddard and Hewit, in 1818. He recollects several purchases of whiskey made by them from the plaintiffs—their amount was included in their five notes on file, which were given for the whiskey and other merchandize. H. & S. were in good credit, at the time of the purchase, and obtained credit from many other houses. It is not customary in New Orleans, for commission merchants to become responsible for the pur-

chasers, unless they charge a guarantee commission.

M' lelland, a witness for the plaintiffs, deposed, he was a clerk to the plaintiffs during the continuance of their partnership. In July, 1818, they were about shipping some hides to the defendants, by the steam boat Kentucky, but declined doing so on the failure of S & H. which left the defendants their debtors—the hides being intended to be paid by the proceeds of S & H's. notes, received on the sale of produce, consigned by the defendants.

Chapman deposed he is a partner of Maunsel White & co. In 1818, he sold whiskey in March at 72 cents; in April, at 60, 48 and 50; in May, 45 and 46 . & H were in good credit till their failure, and the witness have dealt with them, giving them credit, and is a creditor of theirs.

M'Clelland being called again, said the steam boat Kentucky left New Orleans July 22, 1818. The plaintiffs shipped no hides by her. He does not know what became of those they intended shipping on board of her for the defendants.

The defendants admitted the account current annexed to the petition.

East'n District.
*Feb.* 1824.

GILLY & AL.
*vs.*
LOGAN & AL.

Both parties admitted that Stoddard and Hewit filed their bilan July 15, 1818, and that it appears thereby that the amount of their bills payable, is $21,000; their customhouse debt, $2000, and the debts due them are about $32,000. The five notes on file, given by S. and H. to the plaintiffs, are included in the above.

The defendants introduced a letter from the plaintiffs, dated New-Orleans, May 2, 1818, inclosing the amount of sales of a quantity of whiskey, brought down by the defendant, A. Logan, announcing a bill of lading, and invoice of a quantity of hides, shipped to them by the Kentucky, and promising a shipment by the James Monroe, and mentioning an order left them by A. Logan, for the purchase of more hides, to which they said they were then attending.

Also, a letter from J. P. & co. Shipping-port, July 11, 1817, in which they inform the defendants, that if they, determine to order the purchase of hides, the house in N. Orleans will be able to satisfy them—that hides being a costly article in New Orleans, it would be very convenient to draw on the defendants, unless produce was sent down, about the time the hides are to be sent.

A letter from the plaintiffs, New-Orleans, November 26, 1817, announces the shipment of 500 hides, by the steam boat Washington.

Invoice of hides by steam boat James Monroe.

A letter from the defendants to the plaintiffs, New Orleans, April 20, 1818, ordering the purchase of five hundred hides, and their immediate shipment, and that of one thousand in the fall or winter, if they may be had at 11 cents.

A letter of the plaintiffs, of New-Orleans, July 11, 1818, announces the purchase of 600 hides for the defendants account, at 11 cents, promising to ship them immediately by the steam boat Kentucky.

The attention of this court is first called to a bill of exception, taken by the plaintiffs' counsel, to the reading of the deposition of James Hawkins, who was examined at a different place, and on a different day, than the day and place, mentioned in the notice.

Notice appears to have been given of an inention to examine this witness, at the court house of the county of Jessamine, on the fourth of June, 1823, and the return shews that he was examined at a tavern, in Lexington, on the twenty-seventh.

East'nDistrict.
Feb. 1824.

GILLY & AL.
vs.
LOCAN & AL.

We are unable to see why the objection did not prevail. The plaintiffs' agent may have attended at the court house in the county of Jessamine, on the fourth of June, and James Hawkins not being then examined, he may well have concluded that it was thought his testimony would be dispensed with. His deposition then, taken on a subsequent day, and at another place, was not legally taken    Nothing shews that the plaintiffs were there, or any one for them ; and all the questions put to the witness, came from the defendants.

The plaintiffs' object, in instituting the original action, is, the recovery of a balance of $638 73, according to an account annexed to the petition.    The defendants object to an article by which they are charged with 1145 dollars 81 cents, for produce sold Hewit & Stoddard, remaining unpaid, at their failure—on notes of the insolvents, payable to the plaintiffs four months after date.    To rebutt this charge, the defendants introduced the account of sales rendered by the plaintiffs, in which they state the sales to have been made at 60 and 90 days.

The plaintiffs here introduced their clerk, to establish a practice which prevailed, in their

intercourse with S. & H. which was, not to call for a note immediately after every delivery of goods, but to wait, till a sum deemed sufficiently large, to require a note, became due, and then to take it always at four months. This was certainly correct in transactions, in which these two parties alone were concerned; but could not authorise the plaintiffs, after a sale made for the account of a third party, to extend the time of payment of a sale at 60 days, to double the time, and of one at 90 days to a third of the time, in addition to the original credit.

The district judge has confined the claim of the defendants to so much of the account of sales, as would have become due at the time of S. & H's. failure, if notes at 60 days had been taken for one half. As this is placing the matter on the footing less favorable to the defendants, and they have neither appealed nor desired an alteration of the judgment, we refrain from enquiring whether the judge erred in this respect.

The plaintiffs announced the purchase of 600 salted hides, for the defendants, which they promised to ship by the steam boat Kentucky. These hides never were sent. The

East'n District.  moment they were purchased, they were at
*Feb.* 1824.  the risk of the def ndants, for whose account
GILLY & AL.  the purchase was made.    Had they been con-
*vs.*
LOGAN & AL.  sumed by fire, or otherwise destroyed, without
the fault of the plaintiffs, or their agents, the
loss must have been theirs.    Had they dimin-
ished in value, the defendants must have been
affected by it.

It is urged  that S. & H's. failure destroyed
the funds, out of which the plaintiffs were to
be reimbursed their price—but we have seen
the loss resulting from this failure is to be im-
puted to the plaintiffs' conduct.    The plantiffs
had solicited orders to purchase hides, and
manifested their satisfaction to effect purcha-
ses, in the hope that their drafts on the defen-
dants would be honored.    It does not appear
to us the judge *a quo* erred in allowing dam-
ages on this ground.

It is urged, that as the plaintiffs have failed
in establishing any demand at all—there can
be no set off as compensation: therefore no
balance, after the compensation or set off has
destroyed the original claim—but the defen-
dants say that the law has prescribed a remedy
for them, by the way of *reconvention*.    We
think the district judge acted correctly in al-
lowing it.

It is therefore ordered, adjudged, and decreed, that the judgment of the district court be affirmed, with costs.

GILLY & AL.
vs.
LOGAN & AL.

*McCaleb* for the plaintifts, *Strawbridge* for the defendants.